AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

FILED
CLERK, U.S. DISTRICT COURT

AUG 10 2023

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT

8/10/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ JD _____ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America | |
| v. | |
| ROLAND IWHIWHU OTEGA, | Case No.   2:23-mj-04075-DUTY |
| Defendant(s) | |

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

As described in the accompanying attachment, defendant violated the following statutes:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 1344, 1349, 1028A | Bank Fraud Conspiracy, Aggravated Identity Theft |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s *Francisco Solorio Perez*
_____
*Complainant's signature*

Postal Inspector Francisco Solorio Perez
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:  8/10/2023

_____
*Judge's signature*

City and state:  Los Angeles, California

Hon. Jacqueline Chooljian, U.S. Magistrate Judge
*Printed name and title*

AUSA Andrew Brown, 11th Floor, x0102

**Complaint Attachment**

## Count One, 18 U.S.C. § 1349

Beginning not later than 2020, and continuing through at least August 10, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant ROLAND IWHIWHU OTEGA and others conspired to commit bank fraud, in violation of Title 18, United States Code, Section 1344. The object of the conspiracy was carried out, and to be carried out, in substance, as follows: Defendant would steal the personal identifying information of victims, and apply for disability benefits in their names through the California Employment Development Department ("EDD"). Defendant and his co-conspirators would counterfeit disability certifications purportedly issued by real doctors, whose identities were also stolen. Defendant would submit mail forwarding requests to have the victims' mail temporarily transferred to addresses he controlled in order to intercept checks and EDD debit cards, issued through Bank of America, for their disability benefits. Defendant and his co-conspirators would then use the EDD debit cards at ATMs to withdraw in cash the fraudulent benefits. As a result of this fraud, defendant and his co-conspirators defrauded federally-insured financial institutions including Bank of America.

## Count Two, 18 U.S.C. § 1028A

Beginning not later than 2020, and continuing through at least August 10, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant ROLAND IWHIWHU OTEGA knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person during and in relation to a felony violation of Title 18, United States Code, Section 1349, Conspiracy to Commit Bank Fraud, as charged in Count One, knowing that the means of identification belonged to another actual person.

# AFFIDAVIT

I, Francisco Solorio Perez, being duly sworn, hereby depose and state as follows:

1.    I am a United States Postal Inspector with United States Postal Inspection Service (USPIS) and have been since August 2019.

2.    This affidavit is made in support of a criminal complaint and arrest warrant against ROLAND IWHIWHU OTEGA ("OTEGA") for violation of Title 18, United States Code, 1344, 1349, and 1028A (Conspiracy to Commit Bank Fraud, and Aggravated Identity Theft).

3.    I am familiar with the facts and circumstances described herein. This affidavit is based upon my personal involvement in this investigation, my training and experience, and information obtained from various law enforcement personnel and witnesses, including information that has been reported to me either directly or indirectly. This affidavit does not purport to set forth my complete knowledge or understanding of the facts related to this investigation. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only. All figures, times, and calculations set forth herein are approximate.

I.     **PROBABLE CAUSE STATEMENT**

    A.     THE OTEGA RENTAL SEARCH WARRANT

    4.     On or about August 1, 2023, the Honorable United States Magistrate Judge Charles F. Eick issued search warrants for multiple locations including the residence of ROLAND IWHIWHU OTEGA at 10800 Crenshaw Blvd., Apartment 14, Inglewood, California 90303 (the "OTEGA RENTAL") based on the attached affidavit, which is incorporated by reference.

    5.     On or about August 3, 2023, law enforcement agents from USPIS executed these warrants at several locations, including the OTEGA RENTAL. Law enforcement agents knocked and announced their presence at the OTEGA RENTAL. Law enforcement agents heard movement and noise coming from inside the OTEGA RESIDENCE, but no one opened the door.  After approximately one minute, law enforcement agents attempted to breach the door while repeatedly asking OTEGA to open the door and announcing our presence as police.  Only after the attempted breach did OTEGA open the door.

    6.     The OTEGA RENTAL is a one-bedroom apartment and OTEGA was the only person inside. When law enforcement agents entered OTEGA's bedroom, they noticed the window screen to OTEGA's bedroom was partially broken from the bottom as if the noise and movement we heard was OTEGA man-handling the window screen in an attempted to throw items out of the OTEGA RENTAL, such as

- 2 -

evidence, or to escape out the window himself.  Later, members of our team searched below the window to see if he had tossed anything out, but found nothing.

7.    Multiple items of evidence were recovered from within the OTEGA RENTAL, including multiple clothing items matching those worn in ATM photographs by the person believed to be OTEGA who withdrew cash using multiple identities. In addition, a California State income tax refund check in the amount of $6,278.00 and in name of identity theft victim Craig J. Gomberg ("Gomberg"), listing a mailing address other than the OTEGA RENTAL was recovered.

B.    OTEGA CONDUCTS FRAUDULENT TEMPORARY CHANGE OF ADDRESSES USING OTHER PEOPLE'S IDENTITIES

8.    On or about August 4, 2023, I reviewed USPS records and learned Gomberg's mailing address was changed to the OTEGA RENTAL on or about June 19, 2023. I reviewed USPS records and learned from April 2023 thru July 2023 there were at least five temporary change of address in names other than OTEGA listing their new address as the OTEGA RENTAL.

9.    I reviewed the list of fraudulent disability claims filed and learned there were two filed in the name of Gomberg. One of the claims was filed on or about July 31, 2021, and the second claim was filed on or about July 12, 2022. There was an approximate total loss of $51,573 and a potential loss of approximately $150,644 on these claims.

10.   I compared video surveillance images of ATM withdrawals related to Gomberg's disability claims with DMV photographs of OTEGA, and I believe that OTEGA is the person photographed conducting the following transactions using Gomberg's identity:

| Date | Location | Transaction Amount |
|------|----------|--------------------|
| 9/30/2021 | Inglewood, CA | $1,000.00 |
| 10/11/2022 | Inglewood, CA | $1,000.00 |
| 10/17/2022 | Inglewood, CA | $1,000.00 |
| 10/22/2022 | Inglewood, CA | $1,000.00 |

C.   OTEGA'S INTERVIEW

11.   We attempted to interview OTEGA.  He refused to provide the passcodes to his digital devices.  He hedged when shown ATM surveillance photographs of himself withdrawing cash from ATMs, saying only that the person in the photographs looked a lot like him but that he could not be sure who it was.  He claimed that he only used ATMs with access devices in his own name.  OTEGA said he no longer want to speak to us, and the interview was terminated.

D.   OTEGA'S PLANNED FLIGHT TO QATAR

12.   On or about August 5, 2023, I learned that OTEGA had made a reservation for a flight from Los Angeles International Airport ("LAX") to Qatar that same day, which was two days after we executed the search warrant on the OTEGA RENTAL.  According

- 4 -

to AUSA Andrew Brown, Qatar does not have an extradition treaty with the U.S.  OTEGA's flight to Hamad International Airport located in Doha, Qatar was scheduled to depart on August 6, 2023, the day after he made the reservation. The passenger's name was listed as IWHIWHU ROLAND, a variation of OTEGA's name, with the same date of birth as OTEGA. In my training and experience, a common way to evade law enforcement is by using a different name and or a different variation of the name.

13.   On August 6, 2023, law enforcement agents from USPIS, Customs and Border Protection (CBP) and Homeland Security Investigations (HSI) were at LAX attempting to locate and arrest OTEGA on probable cause. Once the flight to Qatar was boarding, we confirmed OTEGA was not at the departure gate. I spoke with a representative from the airline who stated the reservation in the name of IWHIWHU ROLAND was cancelled.

E.   OTEGA HAS A HISTORY OF USING FALSE IDENTITY DOCUMENTS AND COMMITTED THE INSTANT FRAUD WHILE ON PROBATION

14.   I learned the following from my review of Santa Monica Police Department ("SMPD") police report:  On December 3, 2019, OTEGA was arrested for using credit cards and a fraudulent Nevada ID to purchase goods at an Apple store.  An Apple employee told officers that on November 24, 2019, OTEGA purchased two iPhones using the name David Oliak and presented an ID and credit card with that name.  The Apple employee explained that on November 26, OTEGA made another purchase of

- 5 -

two more iPhones but used the name Nataliya Kushnir and presented a Nevada ID and credit card to match that name. On December 3, 2019, OTEGA made a third purchase of two iPhones, and used the name Nataliya Kushnir and had the ID to match the credit card. When arrested, OTEGA had on his person a Nevada ID in the name Nataliya Voma Kushnir as well as matching credit cards. He also had another fraudulent Nevada Id card with the name David Ayo Oliak with the same photo on the other fraudulent ID card.

15.   I reviewed OTEGA's criminal history, which shows that based on the conduct described above, he was convicted of acquiring an access card with intent to defraud in violation of California Penal Code 484E(a) on August 14, 2020, and sentenced to 36 months' probation.   Accordingly, he was on probation at the time he committed the EDD disability fraud described in this and the incorporated affidavits.

F.   OTEGA IS NOT A U.S. CITIZEN

16.   According to HSI records, OTEGA is not a U.S. citizen, but rather a permanent resident alien.

///

## II.   **CONCLUSION**

17.   For the reasons stated above, there is probable cause to believe that ROLAND IWHIWHU OTEGA violated 18 U.S.C. 1344 and 1349 (conspiracy to commit bank fraud), and 1028A (aggravated identity theft).


Attested to by the applicant in accordance
with the requirements of Fed. R. Crim. P. 4.1
by telephone on this __10th__ day of August,
2023.


_____
UNITED STATES MAGISTRATE JUDGE

JACQUELINE CHOOLJIAN

# AFFIDAVIT

I, Francisco Solorio Perez, being duly sworn, hereby depose and state as follows:

## I.   TRAINING AND EXPERIENCE

1.    I am a Postal Inspector with the United States Postal Inspection Service ("USPIS") and have been so employed since August 2019.  I have completed a fourteen-week basic training course in Potomac, Maryland, which included training in the investigation of identity theft via the United States Mail.  I am currently assigned to the USPIS Los Angeles Division, Mail Fraud team where my responsibilities include the investigation of crimes against the United States Postal Service ("USPS") and crimes related to the misuse and attack of the mail system, including theft of Unites States Mail, fraud, and related activity in connection with access devices, identity theft, and unauthorized use of other persons' information for financial gain.

2.    I am familiar with the facts and circumstances described herein. This affidavit is based upon my personal involvement in this investigation, my training and experience, and information obtained from various law enforcement personnel and witnesses, including information that has been reported to me either directly or indirectly. This affidavit does not

purport to set forth my complete knowledge or understanding of
the facts related to this investigation. Unless specifically
indicated otherwise, all conversations and statements described
in this affidavit are related in substance and part only. All
figures, times, and calculations set forth herein are
approximate.

## II.   SUMMARY AND PURPOSE OF AFFIDAVIT: SEARCH WARRANTS

3.   This affidavit is made in support of an application
for a warrant to search the residence of SHAYLA MOYEA BRINKLEY
at 10800 CRENSHAW BLVD., APT. 5, INGLEWOOD, CALIFORNIA 90303,
and assigned GARAGE 27 (the "BRINKLEY RENTAL"), the residence of
ROLAND IWHIWHU OTEGA at 10800 CRENSHAW BLVD., APT. 14,
INGLEWOOD, CALIFORNIA 90303, and assigned GARAGE 25 (the "OTEGA
RENTAL") and OTEGA's BLACK 2019 CHEVROLET CAMARO bearing
California license plate 9BCN771 and VIN 1G1FH1R75K0129128 (the
"OTEGA CAMARO") (collectively, the "SUBJECT PREMISES") for
violations of 18 U.S.C. §§ 1343, 1344, 1349, 1956, and 1028A
(wire and bank fraud, money laundering, conspiracy to the same,
and aggravated identity theft) (the "TARGET OFFENSES"), as set
forth in Attachment B, which is incorporated.  The BRINKLEY
RENTAL and OTEGA RENTAL are more fully described in Attachments
A, which are also incorporated.

4.   As described below, Employment Development Department
("EDD") Criminal Investigator Romo ("Investigator Romo")

- 2 -

identified at least 337 fraudulent State Disability Insurance ("DI") claims associated with OTEGA and BRINKLEY which were submitted to EDD beginning no later than 2020 and continuing through at least 2022. The personal identifying information ("PII") including the social security numbers ("SSNs") of at least 273 individuals was used to file these fraudulent DI claims. Investigator Romo identified an actual loss of approximately $1,575,536 associated with the 337 fraudulent DI claims.

5.      Investigator Romo reviewed some of the claims and noticed the claimant mailing address and the certifying physician or practitioner was often similar. Among the fraudulent claims filed was an Unemployment Insurance ("UI") claim filed by OTEGA on or about June 21, 2020 ("OTEGA's UI claim"). Between 2020 through 2022, OTEGA's UI claim listed the BRINKLEY RENTAL as the mailing address. The BRINKLEY RENTAL was used as the mailing address for approximately 36 fraudulent DI claims.

6.      Approximately 102 claims listed 10800 Crenshaw Blvd., Inglewood, CA 90303 as the claimant's mailing address with different apartment numbers. As described later OTEGA at one point listed the BRINKLEY RENTAL as his personal residence however OTEGA currently resides at OTEGA RENTAL. Investigator Romo reviewed video surveillance footage from Bank of America,

- 3 -

which I know to be federally insured, and State of California
Department of Motor Vehicles ("DMV") pictures of the claimants
including OTEGA and BRINKLEY, and identified OTEGA and BRINKLEY
as the persons making withdrawals at ATMs under different
accounts for different persons.

III. **PROBABLE CAUSE STATEMENT**

7.    Based on my review of law enforcement reports,
conversations with other law enforcement agents, and my own
knowledge of the investigation, I learned the following:

A.    THE EMPLOYMENT DEVELOPMENT DEPARTMENT DISABILITY
INSURANCE BACKGROUND

8.    The EDD DI is a component of the State Disability
Insurance ("SDI") program established in 1946. DI provides
partial wage replacement benefits to eligible California workers
who are unable to work due to a non-work-related illness, injury,
or pregnancy. DI benefits may also be paid for work-related
illness or injuries under certain circumstances prescribed by
law.

9.    A DI claim can be filed over the internet using SDI
Online, or by submitting a paper claim form, "Claim for
Disability Insurance Benefits" ("DE2501"), via mail, or at a DI
office. The claimant must complete part A, "Claimants Statement"
of the DE2501, and have a physician/practitioner complete part B,
"Physician/Practitioner Certificate", certifying the disability
with an expected release date to return to regular or customary

- 4 -

work.

10.   In most cases, the EDD benefits are paid by means of Electronic Benefit Payments to an EDD debit card. A debit card is automatically mailed to the claimants who are determined eligible for EDD benefits. EDD through Bank of America provides claimants with a debit card that is valid for three years from the date of issue. DI benefit payments for which claimants are eligible are deposited to the debit card account. Claimants have access to their funds 24 hours a day, seven days a week everywhere Visa debit cards are accepted. The claimant's name appears on the debit card as the benefit payment recipient. Once the card is received, the claimant activates the card by calling the number of the sticker placed on the card or online by providing the card number, expiration date, social security number and the three digit security code on the card. The debit card has no daily purchase or withdrawal limits and the claimants have full access to their available balance at any time. However, ATM owners determine how much their ATMs will dispense per transaction.

B.   FRAUDULENT DISABILITY INSURANCE CLAIMS FILED UNDER DIFFERENT IDENTITIES

11.   Investigator Romo reviewed approximately 337 DI claims filed online under approximately 273 different identities for an approximate actual loss of $1,575,536 and a potential loss of approximately $12,269,505. Investigator Romo discovered the DI claims were submitted online, and the certifying

physician/practitioner portion of the claims were all submitted online, too. Additionally, the claimant's occupation and the claimant addresses were often the same in these claims. Between 2020 and 2022, approximately 36 claims listed BRINKLEY RENTAL as the claimant's address, as described in more detail below, and OTEGA's own UI claim also listed the BRINKLEY RENTAL as the claimant's address. In addition, approximately 102 UI claims listed 10800 Crenshaw Blvd., Inglewood, CA 90303 (the apartment complex that contains both BRINKLEY RENTAL and OTEGA RENTAL) as the claimant's address, with different apartment numbers. Approximately 65 claims listed 130 N Cedar Ave., Inglewood, CA 90301 as the claimant's address with different apartment numbers, as described in more detail below. The OTEGA CAMARO is registered to 130 N Cedar Ave., Apt. 2, Inglewood, CA 90301. Approximately 24 claims listed 2851 W 120th St., Ste 107, Hawthorne, CA 90250 (a rental mailbox).  As described later, OTEGA is listed as the person renting mailbox 107.

      C.    <u>OTEGA IS ON ATM VIDEO USING AT LEAST 46 OTHER PERSONS' ACCOUNTS</u>

      12.  On or about August 2021 through July 2023, Investigator Romo received surveillance footage from Bank of America, which showed the same individual making withdrawals at ATMs under different accounts for different persons. Investigator Romo compared DMV pictures of the claimants with that of the surveillance footage and determined the person who

appeared on ATM surveillance footage did not match any of the claimants' DMV photo. Investigator Romo reviewed a video surveillance image from September 21, 2022, and noticed the individual making the withdrawal at the ATM under a different person's identity was not wearing a face mask. Investigator Romo compared DMV photographs of OTEGA and confirmed that OTEGA was the person photographed conducting the transaction on September 21, 2022, using a different identity.  On or about September 7, 2022, Investigator Romo reviewed DMV records and learned OTEGA owned the OTEGA CAMARO.

13.  Investigator Romo compared DMV pictures of OTEGA with surveillance footage and identified OTEGA as the individual making the withdrawals under at least 46 accounts, including those of identity theft victims P.K. and D.M.

14.  I reviewed two fraudulent DI claims on behalf of D.M. Based on my review of D.M.'s DI claims, filed on or about March 5, 2021, and August 27, 2022, there was an approximate total loss of $13,376 and a potential loss of approximately $150,349. One of the fraudulent DI claims filed on behalf of D.M. was certified by Dr. D.B., as described later, Dr. D.B. stated he did not certify the claim in the name of D.M.

15.  On or about June 23, 2023, Investigator Romo and I spoke with D.M., who stated he has never filed a DI claim with EDD. D.M. confirmed his date of birth and SSN listed in the

claim filed with EDD on March 5, 2021. Investigator Romo reviewed the address history on the claim and learned D.M.'s mailing address listed in the claim was changed to OTEGA's mailbox shortly after the claim was filed.

16.  I compared video surveillance images of ATM withdrawals related to D.M.'s DI claim with DMV photographs of OTEGA, and I believe that OTEGA is the person photographed conducting the following transactions using D.M.'s identity:

| Date | Location | Transaction Amount |
|------|----------|--------------------|
| 9/21/2022 | Inglewood, CA | $1,000.00 |
| 9/22/2022 | Inglewood, CA | $1,000.00 |
| 9/23/2022 | Inglewood, CA | $1,000.00 |
| 9/26/2022 | Inglewood, CA | $1,000.00 |
| 9/27/2022 | Inglewood, CA | $1,000.00 |
| 9/28/2022 | Inglewood, CA | $1,000.00 |
| 9/29/2022 | Inglewood, CA | $1,000.00 |
| 9/30/2022 | Inglewood, CA | $1,000.00 |
| 10/2/2022 | Inglewood, CA | $1,000.00 |
| 10/3/2022 | Los Angeles, CA | $1,000.00 |

17.  On or about June 23, 2023, D.M. stated he did not give anyone permission to possess or use his SSN or to file any DI claim on his behalf.

D.  OTEGA AND BRINKLEY ARE ON ATM VIDEO USING P.K.'S ACCOUNT

18.  I reviewed the fraudulent DI claim filed on behalf of

- 8 -

victim P.K. It shows that one of P.K.'s DI claims was certified by Dr. M.W., and was filed on or about September 4, 2021. Another of P.K.'s DI claims was certified by Dr. D.B, and was filed on or about July 10, 2022. Based on my review of the claims, there was an approximate total loss of $53,333 and a potential loss of approximately $150,644.

19.   On or about July 25, 2023, Investigator Romo and I spoke with Dr. M.W. regarding the fraudulent DI claim filed on behalf of P.K. that listed Dr. M.W. as the certifying physician/practitioner. Investigator Romo showed Dr. M.W. the claim from 2021 submitted to EDD which listed Dr. M.W. as the certifying physician/practitioner. Dr. M.W. stated he did not certify the claim and did not authorize anyone to do so on his behalf.

20.   On or about July 21, 2023, Investigator Romo spoke with Dr. D.B. regarding fraudulent DI claims that listed Dr. D.B. as the certifying physician/practitioner. Investigator Romo emailed Dr. D.B. the names and date of births of the three claimants associated to OTEGA and BRINKLEY. The three claims were submitted to EDD in or about 2022 and listed Dr. D.B. as the certifying physician/practitioner. Dr. D.B. stated he reviewed a database covering all office activity for him since 2009 and found no records of any of the three claimants. Dr. D.B. stated he did not certify the three claims and did not

- 9 -

authorize anyone to do so on his behalf. Included in the three claims mentioned to Dr. D.B. were ones in the names of victims P.K., D.M., and G.M.  As described in more detail below, BRINKLEY appears on surveillance video of ATM withdrawals related to G.M.'s DI claim.

21.  On or about July 20, 2023, Investigator Romo and I spoke with P.K. who stated he has never filed a DI claim with EDD. P.K. confirmed his date of birth and SSN listed in the claims filed with EDD on September 4, 2021, and July 10, 2022. Between 2021 and 2022, P.K.'s mailing address listed in the claim was 130 N Cedar Ave., Apt. 2, Inglewood, CA.

22.  I compared video surveillance images of ATM withdrawals related to P.K.'s DI claims, DMV photographs of OTEGA and I believe that OTEGA is the person photographed conducting the following transactions using P.K.'s identity.

| Date | Location | Transaction Amount |
|------|----------|--------------------|
| 11/9/2021 | Inglewood, CA | $1,000.00 |
| 11/15/2021 | Inglewood, CA | $1,000.00 |
| 8/18/2022 | Inglewood, CA | $1,000.00 |
| 8/19/2022 | Inglewood, CA | $1,000.00 |
| 9/2/2022 | Inglewood, CA | $1,000.00 |
| 9/15/2022 | Inglewood, CA | $1,000.00 |
| 10/26/2022 | Inglewood, CA | $1,000.00 |
| 11/11/2022 | Inglewood, CA | $1,000.00 |

| 12/8/2022 | Inglewood, CA | $1,000.00 |
| 12/9/2022 | Inglewood, CA | $1,000.00 |

23.   I compared video surveillance images of ATM withdrawals related to P.K.'s DI claims and DMV photographs of BRINKLEY, and I believe that BRINKLEY is the person photographed conducting the following transactions using P.K.'s identity:

| Date | Location | Transaction Amount |
| --- | --- | --- |
| 12/21/2022 | Inglewood, CA | $1,000.00 |
| 12/22/2022 | Inglewood, CA | $1,000.00 |
| 12/23/2022 | Inglewood, CA | $1,000.00 |
| 12/29/2022 | Inglewood, CA | $1,000.00 |

24.   On or about July 20, 2023, P.K. stated he did not give anyone permission to possess or use his SSN or to file any DI claim on his behalf.

E.   BRINKLEY IS ON ATM VIDEO USING 5 OTHER PERSONS' ACCOUNTS

25.   I reviewed the fraudulent DI claims filed on behalf of G.M. One purported to be certified by DR. S.H., and was filed on or about August 8, 2021.  Another purported to be certified by Dr. D.B., and was filed on or about July 11, 2022. Based on my review of G.M.'s DI claims, there was an approximate total loss of $45,720 and a potential loss of approximately $107,494.

26.   On or about July 25, 2023, Investigator Romo and I

- 11 -

spoke with Dr. S.H. regarding the fraudulent DI claim filed on behalf of G.M. that listed Dr. S.H. as the certifying physician/practitioner. Investigator Romo showed Dr. S.H. the claim from 2021 submitted to EDD which listed Dr. S.H. as the certifying physician/practitioner. Dr. S.H. stated he did not certify the claim and did not authorize anyone to complete on his behalf.

27.   On or about June 23, 2023, Investigator Romo and I spoke with G.M. who stated he has never filed a DI claim with EDD. G.M. confirmed his date of birth and SSN listed in the claims filed with EDD on August 8, 2021 and July 11, 2022. Between 2021 and 2022 G.M.'s mailing address listed in the claim was the BRINKLEY RENTAL.

28.   I compared video surveillance images of ATM withdrawals related to G.M.'s DI claims with DMV photographs of BRINKLEY, and I believe that BRINKLEY is the person photographed conducting the following transactions using G.M.'s identity.

| Date | Location | Transaction Amount |
|------|----------|--------------------|
| 8/22/2022 | Inglewood, CA | $1,000.00 |
| 8/23/2022 | Inglewood, CA | $1,000.00 |
| 8/24/2022 | Inglewood, CA | $1,000.00 |
| 8/25/2022 | Inglewood, CA | $1,000.00 |
| 8/26/2022 | Inglewood, CA | $1,000.00 |
| 8/27/2022 | Inglewood, CA | $1,000.00 |

| 8/28/2022 | Inglewood, CA | $1,000.00 |
| 9/19/2022 | Inglewood, CA | $1,000.00 |

29.   On or about June 23, 2023, G.M. stated he did not give anyone permission to possess or use his SSN or to file any DI claim on his behalf.

F.   BRINKLEY LIVES AT BRINKLEY RENTAL, THE ADDRESS TO WHICH THE FRAUDULENT EDD CARDS WERE SENT

30.   On or about July 24, 2023, I searched law enforcement databases and learned BRINKLEY's last known address was BRINKLEY RENTAL. Among the fraudulent DI claims listing BRINKLEY RENTAL as the claimant's mailing address, was OTEGA's UI claim.

31.   On or about July 24, 2023, Investigator Romo and I spoke with M.G. regarding the occupants of BRINKLEY RENTAL and OTEGA RENTAL. M.G. provided the lease agreement for BRINKLEY RENTAL and the lease agreement for OTEGA RENTAL. M.G. stated she was working on getting the occupants at BRINKLEY RENTAL evicted due to failure to pay rent and because she was unable to get in touch with the person on the lease agreement.

32.   On or about July 24, 2023, I reviewed the BRINKLEY RENTAL lease agreement and learned it was in the name of Elara Roland ("Roland"). On or about July 24, 2023, I searched law enforcement databases for Elara Roland's last known addresses and learned that there were no records of Roland living at BRINKLEY RENTAL or any other residence in California. I reviewed

- 13 -

the occupation listed on the lease agreement and learned it was
listed as a pharmacy technician working in Compton, California.
On or about July 25, 2023, Investigator Romo searched EDD
databases and learned there were no records of Roland working or
reporting wages in California. I reviewed the method of payment
for rent for BRINKLEY RENTAL and learned the month of March 2023
was paid with money orders. The money order's listed Roland as
the purchaser of the money orders. Thus it appears that the
person on the lease, Elara Roland, is an alias of BRINKLEY's.
In July 2023, I spoke with the manager for the Crenshaw Manor
Apartments who told me that notwithstanding that the BRINKLEY
RENTAL is leased in the name of Elara Roland, it is actually
lived in and paid for by BRINKLEY, which is an issue with the
Crenshaw Manor Apartments, as they want their leases to
accurately reflect who is living in their apartments.  The
manager further informed me that BRINKLEY rents and uses GARAGE
27.

     33.  On or about July 25, 2023, I reviewed a USPS database
which revealed BRINKLEY is receiving mail at BRINKLEY RENTAL as
of July 21, 2023. Based on my review of USPS databases, I
learned BRINKLEY is receiving mail in names other than BRINKLEY,
too. On or about July 20, 2023, a mail piece addressed to victim
T.S. from Bank of America was delivered. I reviewed the list of
fraudulent DI claims filed and learned there were two fraudulent

                            - 14 -

DI claims filed in the name of T.S. I reviewed the fraudulent DI claims filed on behalf of T.S.

34.  Based on my review of T.S.'s DI claims, one of the claims was filed on or about July 12, 2022 and was certified by Dr. D.B. Based on my review of the claims, there was an approximate total loss of $7,754 and a potential loss of approximately $150,644.

35.  On or about July 25, 2023, Investigator Romo emailed T.S.'s name and date of birth to Dr. D.B. Dr. D.B. stated there were no records of T.S. as a patient of his and he did not certify the claim in the name of T.S.

36.  On or about July 27, 2023, Investigator Romo spoke with T.S. who stated he has never filed a DI claim with EDD. T.S. confirmed his date of birth, California driver license number and SSN listed in the claims. T.S. stated he did not give anyone permission to possess or use his SSN or to file any DI claim on his behalf.

37.  I compared video surveillance images of ATM withdrawals related to T.S.'s DI claims with DMV photographs of OTEGA, and I believe that OTEGA is the person photographed conducting the following transactions using T.S.'s identity.

| Date | Location | Transaction Amount |
|------|----------|--------------------|
| 5/15/2021 | Inglewood, CA | $1,000.00 |
| 5/16/2021 | Inglewood, CA | $1,000.00 |

| 5/17/2021 | Inglewood, CA | $1,000.00 |
| 5/19/2021 | Inglewood, CA | $1,000.00 |

G. OTEGA LIVES AT OTEGA RENTAL, AN ADDRESS TO WHICH FRAUDULENT EDD CARDS WERE SENT

38.   On or about July 19, 2023, I searched DMV records and learned OTEGA's last known address was the OTEGA RENTAL. On or about August 30, 2022, Investigator Romo obtained the lease agreement for 2851 W 120th St., Ste 107, Hawthorne, CA 90250 (a rental mailbox, not an actual suite) and learned mailbox 107 was rented in the name of OTEGA. I reviewed the lease agreement for mailbox 107 and learned OTEGA reported BRINKLEY RENTAL as his home address.

39.   On or about July 24, 2023, Investigator Romo and I conducted surveillance near the Crenshaw Manor Apartments, which contain both the BRINKLEY RENTAL and OTEGA RENTAL.  While conducting surveillance, Investigator Romo and I observed the OTEGA CAMARO parked near the OTEGA RENTAL.

40.   On or about July 24, 2023, Investigator Romo and I spoke with the apartment Manager for the Crenshaw Manor Apartments regarding the occupants of OTEGA RENTAL. The manager stated the OTEGA RENTAL lease agreement was dated March 2023. I reviewed the lease agreement and learned OTEGA was listed as the only resident at the OTEGA RENTAL. I reviewed the method of payment for rent. For the month of July, 2023, OTEGA was listed

- 16 -

as the purchaser of the money orders used to pay the rent.  The manager later indicated that OTEGA rents and uses GARAGE 25.

41.   On or about July 25, 2023, I reviewed a USPS database which revealed OTEGA is receiving mail at the OTEGA RENTAL as of July 22, 2023. Based on my review of USPS databases, I learned OTEGA is receiving mail in names other than OTEGA, too. On or about July 23, 2023, mail addressed to K.D. from Green Dot Bank was delivered to OTEGA RENTAL. In my training and experience, criminals often use Green Dot cards because they function like credit cards, but do not require a credit check, as they must be preloaded with funds, such as by cash.  I searched law enforcement databases for the name K.D. and OTEGA RENTAL and no results were found.

H.   Distinctive Items Depicted in ATM Surveillance Photos

42.   I and EDD Investigator Romo reviewed the ATM surveillance photographs described above that correspond to withdrawals on fraudulent EDD cards, and we saw depicted in them the following distinctive accessories and clothing items worn by the persons we believe to be OTEGA and BRINKLEY:  Solid black baseball cap, green medical scrub shirt, solid black long sleeve button-up shirt, zip-up black fleece with blue/white triangle patterns, solid black baseball cap with an "F" and upside down "F" side by side on the front, green/white army camouflage style shirt with the word "pink" on the upper left, yellow zip-up

- 17 -

hoody with the word "GAP" in white on the front, tan hoody with the words "The North Face" in white on the front, long sleeve grey/black button up security uniform shirt with a patch on the upper left front and another patch on the left upper arm with the letters "SPS" on it, black solid hoody with the words "The North Face" in pink on the upper left.

     I.    Using Shell Businesses to Launder Funds

     43.  In my training and experience, sophisticated EDD fraudsters develop techniques to launder their cash without triggering bank anti-money laundering scrutiny.  One of the simplest ways, used by both OTEGA and BRINKLEY, is to purchase money orders with their cash, which they both did to pay rent on their apartments.  A more advanced technique employed by those who generate large sums of cash is to set up sham businesses and then deposit the cash into bank accounts as though it were legitimate business income.  According to publicly available corporate filings, OTEGA is the CEO of TEGAS', a California corporation that is listed as inactive by the Secretary of State, that had as its addresses the BRINKLEY RENTAL and OTEGA's mailbox.  Similarly, SHAYLA BRINKLEY is listed as the agent for AUTHENTICALLY CROWNED LLC, an Illinois entity that is also listed as inactive.

     J.    Most Recent Evidence of Fraud

     45.  As described above, the disability fraud scheme began

no later than 2020 and continued until at least 2022, the last
date for which I have evidence that EDD cards obtained
fraudulently were mailed to the SUBJECT PREMISES.  Moreover, as
described above, both OTEGA and BRINKLEY received mail in other
persons' names at the OTEGA RENTAL and the BRINKLEY RENTAL in
July of 2023.  In my training and experience, identity profiles
like the ones OTEGA and BRINKELY used in the EDD fraud can be
used to obtain funds in other ways beyond stealing government
benefits, most commonly to obtain credit in those identities.
According to EDD records, OTEGA has had no wage income since
2020 for which records are available, so he must have a non-wage
source of income to support himself, such as fraud.  According
to EDD records, BRINKLEY has often had very small wages reported
from different companies, such as $331 earned in the quarter of
June 2022 for Universal Protection Security Systems, $467 in the
quarter of September 2022 for FEDEX home, $787 earned in the
December 2022 quarter for United Facility Solutions, and $24 for
the March 2023 quarter for South Bay Van Lines.  BRINKLEY's wage
income is insufficient to support her apartment rent, let alone
her lifestyle.  In my training and experience, a common way to
steal identities is through an insider at a business, who may be
able to look up personal identifying information of customers or
co-workers electronically, or may have access to filing cabinets
that contain the same, especially after hours.  BRINKLEY's very

brief employment at a number of businesses, including one for security guards who may possess the keys for an entire office building, is consistent with someone who is trying to use employment as a means to acquire personal identifying information, not someone who is working consistently to support themselves with their wage income.

    K.   <u>TRAINING AND EXPERIENCE REGARDING THE SUBJECT OFFENSES</u>

    46.  Based on my experience and training, and based on my consultation with other law enforcement officers, I know:

       a.   It is common practice for individuals involved in identity theft, bank fraud, and access device fraud crimes to possess and use multiple digital devices at once. Such digital devices are often used to facilitate, conduct, and track fraudulent transactions and identity theft. Suspects often use digital devices to perpetrate their crimes due to the relative anonymity gained by conducting financial transactions electronically or over the internet. They often employ digital devices for the purposes, among others, of: (1) applying online for fraudulent credit cards or government benefits; (2) obtaining or storing personal identification information or "profiles" of the victims of their identity theft; (3) using fraudulently obtained access devices to make purchases, sometimes of further personal information; (4) keeping records of their crimes; (5) researching personal information, such as

social security numbers and dates of birth, for potential
identity theft victims; (6) verifying the status of stolen
access devices; and (7) communicating with their co-
conspirators, by telephone, text, or increasingly by encrypted
communication apps.

b.   It is a common practice for those involved in
access device fraud or identity theft to use either false
identification or stolen real identification to make purchases
with stolen access devices at retail stores in order to avoid
detection and to complete the transaction.

c.   Based on my training and experience, I know that
individuals who participate in mail theft, identity theft, and
access device fraud schemes often have co-conspirators, and
often maintain telephone numbers, email addresses, and other
contact information and communications involving their co-
conspirators in order to conduct their business.  Oftentimes,
they do so on their digital devices.  Suspects often use their
digital devices to communicate with co-conspirators by phone,
text, email, and social media, including sending photos.

d.   From my training and experience, I know
individuals involved in fraud usually keep the tools of their
trade, including their digital devices, near at hand and where
they feel they are safe, most often in their residences and
vehicles, and on their persons.  More sophisticated or cagey

- 21 -

criminals may rent public storage units, commercial mailboxes, or safety deposit boxes, especially when storing valuables such as cash, to further distance themselves from incriminating evidence.

### TRAINING AND EXPERIENCE ON DIGITAL DEVICES[1]

47.   Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.   Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

---

[1]As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as paging devices, mobile telephones, and smart phones; digital cameras; gaming consoles; peripheral input/output devices, such as keyboards, printers, scanners, monitors, and drives; related communications devices, such as modems, routers, cables, and connections; storage media; and security devices.

- 22 -

b.    Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c.    The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d.    Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

- 23 -

48. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

a. Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above. Also, there are now so many types of digital devices and programs that it is difficult to bring to a search site all of the specialized manuals, equipment, and personnel that may be required.

b. Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

49. The search warrant requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

- 24 -

a.    Users may enable a biometric unlock function on some digital devices.  To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device.  To unlock a device enabled with a fingerprint unlock function, a user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second.  To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

b.    In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts.  Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time.  I do not know the passcodes of the devices likely to be found in the search.

c.    Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress ROLAND IWHIWHU OTEGA's and SHAYLA MOYEA BRINKLEY's thumbs and/or fingers on the device(s); and (2) hold

- 25 -

the device(s) in front of their faces with their eyes open to activate the facial-, iris-, and/or retina-recognition feature.

50. Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

**IV.    CONCLUSION**

51. For the reasons stated above, there is probable cause to believe that evidence and proceeds of the Target Offenses, as described more particularly in Attachment B, are in the SUBJECT PREMISES.


Attested to by the applicant in accordance
with the requirements of Fed. R. Crim. P. 4.1
by telephone on this  1st  day of August,
2023.

UNITED STATES MAGISTRATE JUDGE